*Notice:  This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ALASKAN ADVENTURE TOURS, INC., KIMBERLY RIEDEL-BYLER, aka KIMBERLY C. RIEDEL, K. CHRISTINA RIEDEL, and/or KIMBERLY BYLER, and ABC LEASING, LLC, | ) ) ) ) ) ) ) | Supreme Court No. S-14483 |
| | ) | Superior Court No. 1JU-08-00434 CI |
| | ) | O P I N I O N |
| Appellants, | ) ) | No. 6814 - August 23, 2013 |
| v. | ) ) | |
| THE CITY AND BOROUGH OF YAKUTAT, | ) ) ) ) | |
| Appellee. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Patricia A. Collins, Judge and Niesje J.  Steinkruger, Judge pro tem.

Appearances: John E. Casperson, Holmes Weddle & Barcott, Seattle, Washington, for Appellants.  James T. Brennan, Hedland, Brennan and Heideman, Anchorage, for Appellee.

Before:   Fabe, Chief Justice, Carpeneti, Winfree, and Stowers, Justices. [Maassen, Justice, not participating.]

CARPENETI, Justice.

## I. INTRODUCTION

This appeal concerns a company's efforts to vacate a fraudulent conveyance judgment. The company sought relief under Alaska Civil Rule 60(b)(3), claiming fraud and misconduct on the part of a borough in the course of a fraudulent conveyance trial concerning liability for property taxes. Specifically, the company argued that a police officer falsely testified at trial concerning a conversation he allegedly had with the company president regarding the company's obligation to pay borough taxes. The superior court denied relief under Rule 60(b)(3), finding that the company had failed to establish clear and convincing evidence of fraud. The company appeals, arguing that the superior court applied the incorrect legal standard and that the company presented clear and convincing evidence of fraud. The company also appeals various orders relating to discovery and the award of attorney's fees. Because the superior court applied the correct legal standard and did not abuse its discretion in finding that there was not clear and convincing evidence of fraud, we affirm its denial of the Rule 60(b) motion. Because the superior court did not abuse its discretion in refusing to reopen discovery or awarding attorney's fees, we affirm those rulings as well.

## II. FACTS AND PROCEEDINGS

### A. General Background

The City and Borough of Yakutat (Yakutat) instituted an action to collect taxes from Alaskan Adventure Tours, Inc. (Adventure Tours). Adventure Tours operated a commercial hunting and guide business in 2007; Kimberly Byler[1] was the owner and president of the company, and her husband Darren Byler was the general manager. In 2008 Yakutat filed an action in state district court against Adventure Tours

---

[1] In the record, Kimberly is variously referred to as Kimberly Byler, Kimberly C. Riedel, Kimberly Riedel-Byler, and K. Christina Riedel. We refer to her as "Kimberly Byler" in this opinion.

related to unpaid sales and transient accommodation taxes and obtained a final judgment in the amount of $95,808.46 for unpaid taxes, penalties, interest, and other costs. In April 2009 Yakutat filed a supplemental complaint alleging that Adventure Tours and Kimberly had (in late 2007 and early 2008) engaged in fraudulent conveyance to avoid payment of the taxes by transferring all of Adventure Tours' assets to Kimberly personally and then to ABC Leasing, LLC, another company solely owned by Kimberly.

The fraudulent conveyance claim was transferred from the district court to the superior court, and Superior Court Judge Patricia A. Collins presided over a jury trial in February 2010. At trial, Adventure Tours and co-defendant Kimberly defended on grounds that they had no notice of Yakutat's tax claim at the time of the asset transfers. John Nichols, the Yakutat chief of police, testified that he had a conversation with Kimberly in 2007 during which she demonstrated awareness of Yakutat's tax claim against Adventure Tours. He stated that this conversation took place as he drove Kimberly to the airport after interviewing her in May 2007 about an unrelated matter at the Yakutat police station. Kimberly testified that this conversation never occurred and that Chief Nichols did not drive her to the airport. Apart from Chief Nichols's testimony, Yakutat offered substantial additional evidence of notice at trial. This evidence included the following: (1) several letters from Yakutat to Adventure Tours, sent in 2004, 2005, and 2007, advising Adventure Tours of the obligation to pay Yakutat taxes when doing business in the area; (2) Yakutat attorney Sara Heideman's testimony that Darren Byler had called her in May 2007 to dispute Adventure Tours' liability for the taxes and evidence in support of this testimony, including Heideman's contemporaneous notes, her time sheet, and Adventure Tours' phone records; and (3) Yakutat tax and license clerk Ladonna James's testimony that Kimberly called James in response to a February 2007 letter from James to discuss Adventure Tours' obligations to pay Yakutat taxes.

The jury found that Adventure Tours and Kimberly had fraudulently conveyed assets to ABC Leasing. It also found that Kimberly had intentionally testified untruthfully at her judgment debtor examination regarding the existence or value of Adventure Tours' assets and as to the availability of Adventure Tours' business records. On the basis of these verdicts, Judge Collins entered judgment in favor of Yakutat on March 18, 2010.[2]

One year later, Adventure Tours moved for relief from the fraudulent conveyance judgment under Alaska Civil Rule 60(b)(3) on the basis of fraud and misconduct on the part of Yakutat. Alternatively, Adventure Tours requested that the court hold the motion in abeyance and permit Adventure Tours additional time to conduct new discovery. Judge Collins denied the motion and awarded Yakutat enhanced attorney's fees of 50% for opposing Adventure Tours' Rule 60(b) motion. Adventure Tours then brought a motion for reconsideration, which was denied by Superior Court Judge Niesje J. Steinkruger.[3] Adventure Tours now appeals the denial of its Rule 60(b)(3) motion and its motion for reconsideration. It also appeals the superior court's denial of its request to reopen discovery and the court's order awarding Yakutat enhanced attorney's fees.

## B.    Facts And Proceedings Directly Related To The Issues On Appeal

A key issue at the fraudulent conveyance trial was whether Adventure Tours had notice of Yakutat's tax claims at the time of the asset transfer from Adventure Tours to Kimberly Byler to ABC Leasing. The central claim in Adventure Tours' Rule

---

[2]    For various reasons the judgment was amended several times; ultimately the court entered a Third Amended Judgment on Fraudulent Conveyance on January 29, 2011, dated nunc pro tunc March 18, 2010.

[3]    The case was reassigned to Judge Steinkruger on June 7, 2011, due to Judge Collins's retirement from the bench.

60(b) motion was that Chief Nichols falsely testified at trial that he had discussed Yakutat's tax claim with Kimberly when he drove her to the airport on May 15, 2007.

### 1. Summary of factual disputes

The parties dispute whether Chief Nichols drove Kimberly Byler to the airport on May 15, 2007 and, consequently, whether they discussed Adventure Tours' tax obligations to Yakutat at that time. Adventure Tours asserts that Chief Nichols falsely testified that he gave Kimberly a ride to the airport. Adventure Tours supports this assertion with two allegations. First, Adventure Tours alleges that Chief Nichols's testimony regarding the order of the interviews of Kimberly and an Adventure Tours employee is false. Chief Nichols testified that he interviewed Kimberly before the employee, but Adventure Tours asserts that Kimberly was interviewed after the employee. Second, Adventure Tours argues that the computer and audio evidence confirming Chief Nichols's testimony regarding the time and order of the interviews was altered in order to support his false version of the events of May 15, 2007. Yakutat disputes these accusations, contending that Chief Nichols testified truthfully regarding the order and time of the interviews, and that there is no evidence to support Adventure Tours' allegations of evidence tampering.

### 2. Chronology of events on May 15, 2007

Although the fraudulent conveyance trial took place in 2010, the disputed events relate to a May 2007 investigation of an unrelated matter, the drowning death of a crew member on an Adventure Tours boat. On May 15, Kimberly and Adventure Tours employee Brian Barton arrived in Yakutat by an air taxi flight from Icy Bay. Chief Nichols and a deputy transported Kimberly and Barton to the Yakutat police station, where Kimberly and Barton were interviewed by Chief Nichols. Both of these interviews were recorded.

The order of the interviews is disputed. Chief Nichols testified that his interview with Kimberly ended at 11:10 a.m. and was about 19 minutes long. He stated that he next interviewed Barton from 11:15 a.m. to 11:26 a.m. This timeline accords with Chief Nichols's contemporaneous statements made on the audio recordings of the interviews, the computer date-time stamp on Chief Nichols's computer indicating the original download time of the audio recordings, and the record start and stop times as written into the file by the Olympus recorder used to make the audio recordings. It is sometime after the conclusion of these interviews that Yakutat asserts the disputed ride to the airport took place.

### 3. The superior court's rulings

Judge Collins denied Adventure Tours' Rule 60(b) motion, finding that Adventure Tours' claims were "not supported by significant evidence beyond [the Bylers'] own testimony — which was clearly rejected by the jury in reaching its verdict and found to be untruthful by the jury and this court." The court concluded that there was not clear and convincing evidence of fraud. Moreover, the court found that "[t]here is absolutely no reason to believe that the verdict would have been different had Chief Nichol[s]'s testimony not been presented" and stated that "[a]t best, the instant attack on the jury verdict involves claims of an imperfect recollection about a largely inconsequential event." The court did not address Adventure Tours' claims of evidence tampering in its order.

Judge Steinkruger denied Adventure Tours' motion for reconsideration of the denial of its Rule 60(b) motion. Judge Steinkruger denied the motion on two bases — on procedural grounds because the motion sought to augment arguments related to the 60(b) motion, and on the merits because the court found that even if Adventure Tours' "new evidence" was considered, it still failed to establish by clear and convincing evidence that the verdict was obtained by fraud.

## III.  STANDARD OF REVIEW

Motions for relief from judgment brought under Civil Rule 60(b) are reviewed on appeal only for an abuse of discretion.[4]  However, whether the trial court applied the correct legal standard is a question of law that is reviewed de novo.[5]  We review the denial of a motion for reconsideration for abuse of discretion.[6]  An abuse of discretion exists if we are "left with a definite and firm conviction on the whole record that the trial judge has made a mistake."[7]

We review discovery orders, including motions to reopen discovery, for abuse of discretion.[8]  We also review awards of attorney's fees for an abuse of discretion and will reverse only if the award is "arbitrary, capricious, manifestly unreasonable, or

---

[4]     *Williams v. Williams*, 252 P.3d 998, 1004 (Alaska 2011) ("A trial court's ruling on an Alaska Civil Rule 60(b) motion is reviewed for abuse of discretion; it will not be disturbed unless we are left with 'the definite and firm conviction on the whole record that the judge ha[s] made a mistake.' " (alteration in original) (quoting *Thomas v. Thomas*, 581 P.2d 678, 679 (Alaska 1978))).

[5]     *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011).

[6]     *Smith v. Groleske*, 196 P.3d 1102, 1105 (Alaska 2008) (citing *Manelick v. Manelick*, 59 P.3d 259, 262 (Alaska 2002)).  Such review does not focus on the merits of the underlying decision, but only on the propriety of the denial of reconsideration.  *Id.* at 1106.

[7]     *Babinec v. Yabuki*, 799 P.2d 1325, 1332 (Alaska 1990) (citing *Alaska Placer Co. v. Lee*, 502 P.2d 128, 132 (Alaska 1972)).

[8]     *See Prentzel v. State, Dep't of Pub. Safety*, 169 P.3d 573, 594 (Alaska 2007); *Hallam v. Alaska Airlines, Inc.*, 91 P.3d 279, 283 (Alaska 2004) (citing *Taylor v. Johnston*, 985 P.2d 460, 463 (Alaska 1999)).

stemmed from improper motive."[9]  We review the superior court's interpretation of the civil rules de novo.[10]

## IV.  DISCUSSION

### A.  The Alaska Civil Rule 60(b)(3) Motion

Civil Rule 60(b)(3) provides that a party may be relieved from a judgment for the fraud, misrepresentation, or other misconduct of an adverse party.  The party who asserts fraud, misrepresentation, or misconduct has the burden of proving those assertions by clear and convincing evidence.[11]  "The conduct complained of must be material in the sense that it prevented the losing party from fully and fairly presenting his case or defense."[12]  Therefore, in order to prevail on its Rule 60(b)(3) motion, the moving party must prove not only that there was misconduct but also that such conduct prevented it from fully and fairly presenting its case at trial.[13]

Adventure Tours argues that the superior court applied the wrong legal standard in its Rule 60(b) ruling.  In addition, Adventure Tours contends that the superior court abused its discretion in denying the Rule 60(b) motion because, taken together, the facts presented by Adventure Tours constitute clear and convincing evidence of

---

[9]    *Wagner v. Wagner*, 183 P.3d 1265, 1266-67 (Alaska 2008) (quoting *Ware v. Ware*, 161 P.3d 1188, 1192 (Alaska 2007)).

[10]    *Wolff v. Cunningham*, 187 P.3d 479, 482 (Alaska 2008) (citing *Miller v. Clough*, 165 P.3d 594, 599 n.8 (Alaska 2007)).

[11]    *Babinec*, 799 P.2d at 1333 (citing *McCall v. Coats*, 777 P.2d 655, 658 (Alaska 1989)).

[12]    *Id.*

[13]    *See* 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 60.43 [1][c] (3d ed. 2012) ("Courts determining Rule 60(b)(3) motions always require proof that the alleged fraud or other misconduct prevented the moving party from fully and fairly presenting his or her case at trial.").

fraudulent conduct on the part of Yakutat sufficient to warrant relief from judgment. Yakutat responds that the superior court applied the correct legal standard and that its denial of Adventure Tours' Rule 60(b) motion was not an abuse of discretion because Adventure Tours failed to present clear and convincing evidence of fraud or misconduct.

### 1. The superior court applied the correct legal standard.

Adventure Tours also contends that — rather than simply applying the clear and convincing evidentiary standard — the superior court erroneously required it to meet two additional tests. That is, the superior court mistakenly required (1) proof that the fraud could not have been timely discovered by due diligence and (2) proof that the jury verdict would have been different but for the alleged fraud. We disagree. The superior court correctly applied the clear and convincing standard[14] and, as explained below, did not erroneously impose any additional requirements on Adventure Tours.

Adventure Tours argues that the superior court incorrectly applied the due diligence standard required under Alaska Civil Rule 60(b)(2) to its Rule 60(b)(3) motion,[15] effectively requiring proof that Chief Nichols's alleged fraud could not have been discovered by due diligence. To support this argument, Adventure Tours seizes on the court's statement that Adventure Tours was aware of Chief Nichols's statement many months before trial and that it "could have examined these issues at or long before trial." But this argument is unavailing. The court's observation regarding Adventure Tours' failure to examine these issues at trial is not an application of the due diligence

---

[14] *Babinec*, 799 P.2d at 1333 ("One who asserts fraud, misrepresentation or misconduct as a ground for relief under Civil Rule 60(b)(3) has the burden of proving those assertions by clear and convincing evidence." (citing *McCall*, 777 P.2d at 658)).

[15] *Compare* Alaska R. Civ. P. 60(b)(2) (basing relief upon "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial"), *with* Alaska R. Civ. P. 60(b)(3) (basing relief upon fraud, misrepresentation, or misconduct, with no mention of due diligence).

standard.[16] Rather, in finding Adventure Tours was aware of Chief Nichols's statement before trial, the superior court implicitly found that Adventure Tours was not prevented from fully and fairly litigating its case at trial.[17]

Adventure Tours had notice more than ten months before trial that Chief Nichols claimed he had driven Kimberly to the airport on the day in question. It could have conducted discovery on the matter at that time, and offered any relevant evidence at trial. But, as Adventure Tours conceded at oral argument, it conducted no discovery on this matter prior to trial. Rule 60(b)(3) was not intended to reward litigants who have failed to adequately investigate their case or vigorously cross-examine a witness; therefore, relief should be denied when "the moving party had ample opportunity to uncover the alleged fraud or perjury at trial through cross-examination."[18] Adventure Tours' earlier failure to pursue discovery regarding Chief Nichols's statement does not entitle it to relief from judgment now.

Adventure Tours also takes issue with the superior court's statement that "[t]here is absolutely no reason to believe that the verdict would have been different had Chief Nichol[s]'s testimony not been presented," claiming this statement shows that the court improperly held Adventure Tours to a "but for" standard. Adventure Tours is correct that a Rule 60(b)(3) movant need not prove that it would have prevailed but for

---

[16] Moreover, to the extent that Adventure Tours' 60(b) motion relied on new evidence, we note that it would have been more properly brought under Rule 60(b)(2) and application of the due diligence standard would have been appropriate. *See* Alaska R. Civ. P. 60(b)(2). At oral argument before us, Adventure Tours admitted that this case was about new evidence.

[17] *See Babinec*, 799 P.2d at 1334 & n.10 (interpreting trial court's statement that a party had failed to pursue discovery despite sufficient knowledge of the issue as an implicit determination that the defense was not deprived of a full and fair litigation opportunity, and upholding the trial court's denial of relief under Rule 60(b)(3)).

[18] MOORE, ET AL., *supra* note 13, ¶ 60.43[1][c].

the alleged fraud or misconduct.[19] But we held in *McCall v. Coats* that a litigant is not prevented from fully and fairly presenting his or her case where misconduct "had little bearing on the merits of the case" and "would not have probably changed the result on a new trial."[20] We interpret the superior court's comments concerning the likelihood of a different outcome as part of its determination that Adventure Tours was not prevented from fully and fairly litigating its case. Indeed, as Adventure Tours conceded at oral argument before us, there is little difference between the superior court's comments here and our analysis in *McCall*.

Finally, Adventure Tours argues that in order to prevail on its Rule 60(b)(3) motion, it only needed to show that Chief Nichols's allegedly fraudulent testimony and conduct was intentional. Adventure Tours argues that it has made such a showing and is therefore entitled to a presumption that the fraud prevented it from fully and fairly litigating its case. This argument ignores the requirement under Rule 60(b)(3) to first establish by clear and convincing evidence that any fraud or misconduct *actually occurred*.[21] And, as discussed in the following section, Adventure Tours has failed to meet the preliminary burden of demonstrating fraud or misconduct.

---

[19]     *See id.* ¶ 60.43[1][d] ("[T]he moving party does not have to prove that he or she would prevail in a retrial in order to secure relief from judgment on the basis of fraud of an adverse party."); *see also McCall*, 777 P.2d at 658 (applying Rule 60(b)(3) in the context of misconduct in withholding information called for by discovery, and noting that the Rule "does not require that the information withheld be of such a nature as to alter the result in the case" (quoting *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978))).

[20]     777 P.2d at 658.

[21]     The case Adventure Tours primarily relies upon is inapposite — there the court had already determined that the misconduct had occurred. *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 922 (1st Cir. 1988).

We conclude that the superior court applied the correct legal standard in its evaluation of Adventure Tours' Rule 60(b)(3) motion.

**2.      The superior court did not abuse its discretion in denying the Rule 60(b)(3) motion.**

Adventure Tours contends that taken together, the evidence offered in its Rule 60(b) motion constitutes clear and convincing evidence of fraud. Yakutat responds that the proffered evidence does not remotely approach clear and convincing evidence of fraud; thus, it was not an abuse of discretion for the superior court to deny Adventure Tours' motion for relief from judgment. We agree with Yakutat.

Adventure Tours cobbles together a succession of imprecise testimonies and slight contradictions between the recollections of several different individuals regarding relatively inconsequential matters occurring almost three years earlier in an attempt to prove that Chief Nichols lied when he testified that he gave Kimberly a ride to the airport on May 15, 2007; but Adventure Tours falls far short of meeting the clear and convincing evidentiary standard. For example, Chief Nichols testified that he transported Kimberly to the airport after he concluded the interview with Barton at 11:26 a.m. — "somewhere around that time, after 11:30." Adventure Tours seizes on this testimony and argues that phone records showing that Kimberly did not leave the police station until sometime after 12:00 p.m. establish that Chief Nichols's testimony regarding the ride to the airport is false. But as Yakutat points out, far from demonstrating an irreconcilable conflict between Chief Nichols's testimony and the phone records, Adventure Tours merely establishes that any trip to the airport could not have taken place until after the last phone call concluded, sometime after 12:00 p.m.

The remainder of Adventure Tours' evidence similarly fails to rise to the level of clear and convincing evidence of fraud. An example is instructive. To support its contention that Chief Nichols did not give Kimberly a ride to the airport on

May 15, 2007, Adventure Tours alleges that the Yakutat police tampered with evidence — specifically, the recordings of the interviews of Barton and Kimberly — in order to cover up the fact that Barton was actually interviewed before Kimberly. According to Adventure Tours, the "true" order of the interviews is relevant to show that evidence was altered "to support Chief Nichols's version of events of May 15." In its argument before the superior court, Adventure Tours reasoned as follows: "[If] the Barton interview preceded the Byler interview, then the recordings have been altered. . . . If the recordings have been altered, then [Yakutat]'s evidence is false. There was no ride to the airport . . . ."

In order for Adventure Tours' claims regarding the timing of the interviews and evidence tampering to be plausible, Yakutat would have needed to alter the evidence in three places: (1) the contemporaneous statements made in the audio recording of the interviews; (2) the recording start and end times, as written into the file by the Olympus recorder used to make the recordings; and (3) the data stored on the Yakutat servers showing the download times of the interviews from the recorder to the computer. All three categories of evidence corroborate Chief Nichols's testimony.[22]

_____

[22]    Although there is a difference of two to three minutes between the times indicated in Chief Nichols's testimony and the electronic time stamps, this is negligible. According to Chief Nichols's testimony and the contemporaneous statement on the audio recording, the Kimberly Byler interview concluded at 11:10 a.m. The date-time stamp on Chief Nichols's computer, transferred to the police department's server, indicated that the audio recording of the Kimberly Byler interview was downloaded at 11:07 a.m. on May 15, 2007. The record start time, end time, and duration for the Kimberly Byler interview — as written into the file by the Olympus recorder used to make the audio recordings — are as follows: Start: 10:48:39 a.m.; End: 11:07:33 a.m.; Duration: 18:54 (minutes:seconds).

Chief Nichols's testimony regarding the Barton interview timeline is likewise supported by the evidence. The Barton interview began at 11:15 a.m. and ended at 11:26 a.m., according to a statement contemporaneously made on the audio recording

(continued...)

Adventure Tours fails to address the third point at all, and offers only a modicum of evidence on the other two points. Adventure Tours engaged two experts to look at the data from Yakutat's servers; and Yakutat retained an expert to respond to the allegations in the first expert's report. Adventure Tours' first expert, Douglas Lacey, posited that Kimberly's interview was not downloaded to Chief Nichols's computer until May 2009, two years after the interview took place. Lacey concluded that "something occurred" to the file on that date and that the possibility that the recording was altered or edited "[could not] be ruled out" without further information.

Matthew Joy, Yakutat's information technology contractor, performed an analysis on the data stored on the Yakutat servers and refuted Lacey's conclusions. Joy's analysis showed that Kimberly's interview was first downloaded on May 15, 2007, and Joy concluded that there had been "no modification whatsoever" to the Kimberly Byler interview file since it was first downloaded to Chief Nichols's computer. This analysis included a comparison of both the quantity and the content of the data. Adventure Tours' second expert, Alfred L. Johnson, challenged Joy's conclusions by critiquing his methods: Johnson stated that Joy's analysis should have included "a review of unallocated or deleted space on the hard drives" and that software used by Joy "is not customarily relied on by forensic examiners for this type of work." But Lacey's and Johnson's reports did not demonstrate clear and convincing evidence of evidence spoliation or fraud.

---

**22** (...continued)
by Chief Nichols. The date-time stamp on Chief Nichols's computer, transferred to the police department's server, indicated that the Barton interview ended at 11:24 a.m. The record start time, end time, and duration for the Barton interview — as written into the file by the Olympus recorder used to make the audio recordings — are as follows: Start: 11:12:29 a.m.; End: 11:24:25 a.m.; Duration: 11:55 (minutes:seconds).

Having reviewed the record, we are satisfied that the superior court did not abuse its discretion in concluding that Adventure Tours failed to meet its burden of demonstrating clear and convincing evidence of fraud.[23] We therefore affirm the superior court's ruling.

**B.    The Superior Court Did Not Abuse Its Discretion In Refusing To Reopen Discovery.**

Adventure Tours argues that the superior court abused its discretion by denying its request to reopen discovery, which was made as part of Adventure Tours' Rule 60(b) motion. We disagree.

The fraudulent conveyance trial took place in February 2010, and judgment was initially entered in March 2010. In March 2011, over a year after trial and exactly one year after the initial entry of judgment, Adventure Tours filed its motion for relief from judgment. As a form of alternative relief (in the event the court did not grant its motion to vacate judgment) Adventure Tours requested that the court hold the motion in abeyance and permit Adventure Tours additional time to conduct new discovery. Adventure Tours asserted that it expected additional discovery to uncover further information about the timing of Chief Nichols's interviews of Kimberly and Barton and other details that would support or disprove Chief Nichols's testimony about driving Kimberly to the airport.

---

[23]    For the same reasons, we conclude that the superior court did not abuse its discretion in denying Adventure Tours' motion for reconsideration. Under Alaska Civil Rule 77(k)(1)(ii), a party may ask the court to reconsider a ruling previously decided if, in reaching its decision, the court has overlooked or misconceived some material fact or proposition of law. Adventure Tours claimed that the superior court had "overlooked or misconceived some material facts in the case," but failed to point with any specificity to what facts the court overlooked. Instead, Adventure Tours merely repeated the arguments made in its original Rule 60(b) motion, and attempted to bolster those arguments with new evidence not included in the original Rule 60(b) motion. Thus, the superior court did not err when it denied Adventure Tours' motion.

The superior court denied Adventure Tours' request for additional discovery, stating that "[d]iscovery could have and should have occurred before trial in this case." The superior court noted that the Bylers were aware of Chief Nichols's statements several months before trial and could have examined these issues before or at trial. The superior court is correct. Chief Nichols's March 27, 2009 affidavit was received by Adventure Tours on April 6, 2009 — 10 months before trial. This put Adventure Tours on notice that Chief Nichols claimed to have had a conversation with Kimberly Byler about Yakutat's tax claims while he drove her from the police station to the airport.[24] Thus, Adventure Tours could have conducted discovery on this point before trial.

As a general matter, a trial court has broad discretion to limit discovery.[25] We have held that a trial court does not abuse this discretion in refusing to reopen discovery where the parties had sufficient opportunity to engage in discovery prior to trial.[26] As such, the superior court did not abuse its discretion here.

---

[24]    In relevant part, Chief Nichols's affidavit states:

> While I was transporting Ms. Riedel-Byler back from the police station to the airport, she stated that she felt that everybody in Yakutat was against her and her business, or words to that effect. In this context, I brought up the pending issue as to the non-payment by her business, Adventure Tours, of the Borough sales and "bed" taxes. Ms. Riedel-Byler stated that they were not obligated or responsible for payment of these taxes. Her response demonstrated to me that she was already aware of the Borough's effort to seek payment of the tax by her business.

[25]    *Glover v. W. Air Lines, Inc.*, 745 P.2d 1365, 1370 (Alaska 1987).

[26]    *Walden v. Dep't of Transp.*, 27 P.3d 297, 305 (Alaska 2001) (finding no abuse of discretion where "parties had ample opportunity to engage in discovery prior to trial").

**C.    The Attorney's Fees Award Was Not An Abuse Of Discretion.**

Finally, Adventure Tours argues that the superior court abused its discretion when it awarded Yakutat an enhanced attorney's fee award of 50% of the amount incurred. Alaska Civil Rule 82(b)(3) permits a court to vary an attorney's fee award if the court determines that a variation is warranted. Relevant factors under the rule include "the complexity of the litigation,"[27] "the reasonableness of the claims,"[28] and "vexatious or bad faith conduct."[29] Here, the court based its decision to award enhanced fees on its finding that Adventure Tours' Rule 60 claims were both "complex" and "not reasonable."

Adventure Tours challenges the superior court's finding that its Rule 60(b) claims were unreasonable. It contends that it should not be "punished" for its good faith attempt to bring additional evidence to the trial court's attention. But the superior court did not act to punish Adventure Tours; it merely awarded attorney's fees under the relevant rule. Adventure Tours also suggests that the superior court abused its discretion because it found no evidence of vexatious or bad faith conduct. But a court is not required to find vexatious or bad faith conduct in order to award enhanced attorney's fees.[30] Furthermore, we are not persuaded that the superior court abused its discretion when it concluded that Adventure Tours' claims were complex and unreasonable. The court found that Adventure Tours' Rule 60(b) motion "was complex in that it contained numerous assertions . . . regarding the evidence" and that it was "not reasonable" given

---

[27]    Alaska R. Civ. P. 82(b)(3)(A).

[28]    Alaska R. Civ. P. 82(b)(3)(F).

[29]    Alaska R. Civ. P. 82(b)(3)(G).

[30]    *See id*. (listing "the complexity of the litigation" and "the reasonableness of the claims and defenses pursued by each side" as factors for the court to consider when varying an attorney's fee award).

the high standard litigants must meet to successfully prove fraud. These findings are not clearly erroneous. We therefore affirm the award of attorney's fees.

## V.    CONCLUSION

We AFFIRM the decision of the superior court.