NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| GEORGE M. DROPIK, | ) | |
| | ) | Supreme Court No. S-16446 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-15-04956 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| TRACY R. DROPIK, | ) | AND JUDGMENT* |
| n/k/a TRACY R. ANDIS, | ) | |
| | ) | |
| Appellee. | ) | No. 1653 – November 1, 2017 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances: George M. Dropik, pro se, Wasilla, Appellant. Tracy Andis, pro se, Anchorage, Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, and Carney, Justices. [Bolger, Justice, not participating.]

## I.     INTRODUCTION

A couple divorced and distributed their marital property through a court-approved settlement agreement. When the ex-husband failed to make a required equalization payment, the ex-wife sought a judgment enforcing the settlement; in response the ex-husband alleged newly discovered evidence and the ex-wife's fraud and sought relief from judgment. The superior court denied relief from judgment, noting that the ex-husband had access to the information before he chose to settle. The court then

---

\*     Entered under Alaska Appellate Rule 214.

entered judgment against the ex-husband for the amount of the equalization payment plus interest. The ex-husband appeals. We see no abuse of discretion in the superior court's denial of the ex-husband's motion for relief from the property settlement, and we therefore affirm its decision.

## II. FACTS AND PROCEEDINGS

Tracy Andis and George Dropik married in 1989 and divorced in 2015. Both were represented by counsel. They mediated and reached a property settlement agreement approved by the superior court at an October 2015 hearing. An attached property disposition spreadsheet listed the parties' joint checking account,[1] Tracy's personal checking account, and a number of other assets and debts, including the marital home and mortgage. The spreadsheet also included a section entitled "Post Separation Credits Owed to Husband," labeling over $19,000 as "Cash Post Separation Tracy." When the superior court asked for an explanation of that section, both George and Tracy stated that those amounts had been discussed and resolved during mediation. Tracy had listed her personal credit card in her initial disclosures, but the spreadsheet did not include it or the two checking accounts — one held by George and Tracy's daughter and one held by Tracy's father — on which Tracy was a co-signer.

Under the settlement agreement George kept most of the marital assets and debts and agreed to pay Tracy a $15,900 equalization payment. George failed to make the payment, and Tracy filed a motion in July 2016 to enforce the settlement. George opposed; he claimed Tracy had "failed to provide all sources of money and accounts in her name during the divorce" and had "removed approx[imately] $21,000 from [George's] checking acc[ount], after separation, and did not repay."

---

[1] George often refers to this as his own checking account. The statements in the record do not list the account holders' names, but at the enforcement hearing George and Tracy both described it as their joint marital checking account.

The superior court held a hearing in August 2016. Both parties were self-represented, and they agreed that George had failed to make the required payments. The primary issue instead was George's claim that Tracy failed to disclose her true financial status before settlement. George alleged a number of fraudulent actions by Tracy, including that she: (1) failed to disclose bank accounts and credit cards she had access to, including credit cards she paid from their joint bank account; (2) made false statements in her original divorce brief; and (3) spent over $21,000 for personal use from the marital account after separation. George provided exhibits, including bank account and credit card statements purporting to evidence Tracy's spending, and divorce filings showing Tracy's allegedly false statements about her accounts.

The superior court understood George's claim as a request for relief from judgment under Alaska Civil Rule 60(b)(3) due to Tracy's alleged fraud,[2] but also considered potential related claims under Rules 60(b)(1) and (2).[3] In a decision on the record, the court rejected all of George's claims under Rule 60(b). The court observed that George had access to relevant account information during settlement negotiations, including statements for their joint account and Tracy's separate account. The court also observed that the parties' spending, although perhaps "irresponsible," was not a sufficient basis for relief from judgment. The court recognized that George's main argument fell under Rule 60(b)(3) but also noted that the account statements George presented were not newly discovered evidence, implying that the statements also were

---

[2]     Rule 60(b)(3) allows a court to relieve a party from judgment due to "fraud . . . , misrepresentation, or other misconduct of an adverse party."

[3]     Rule 60(b)(1) allows a court to relieve a party from a judgment due to "mistake, inadvertence, surprise or excusable neglect." Rule 60(b)(2) permits relief due to "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial."

insufficient to set aside the judgment under Rule 60(b)(1) or (2). The court issued a written order granting Tracy's motion and denying George's, as well as ordering George to pay pre- and post-judgment interest on the $15,900 judgment.

## III.   STANDARD OF REVIEW

"We generally 'review questions regarding a trial court's response to a motion to enforce a [divorce] settlement under the abuse of discretion standard.' "[4] We also generally review for an abuse of discretion the superior "court's ruling on an Alaska Civil Rule 60(b) motion."[5]

## IV.   DISCUSSION

The parties' settlement agreement required George to pay Tracy $15,900. George's arguments on appeal focus on his allegations that Tracy failed to disclose all assets and debts, made false statements at both the original divorce and subsequent enforcement hearings, and engaged in excessive post-separation spending. These arguments could fall under Rule 60(b)(1), (2), and (3). George also makes some arguments that Tracy failed to comply with court rules and the original divorce pretrial order. Finally, George raises concerns about the superior court's statements and conduct at the enforcement hearing.

### A.   George Is Not Entitled To Relief From Judgment Under Rule 60(b).

George argues that the $15,900 judgment cannot be enforced against him because he is entitled to relief under Rule 60(b). That rule allows a court to "relieve a

---

[4]     *Herring v. Herring*, 373 P.3d 521, 528 (Alaska 2016) (alteration in original) (quoting *Ford v. Ford*, 68 P.3d 1258, 1263 (Alaska 2003)).

[5]     *Williams v. Williams*, 252 P.3d 998, 1004 (Alaska 2011) (citing *Thomas v. Thomas*, 581 P.2d 678, 679 (Alaska 1978)). *But see Blaufuss v. Ball*, 305 P.3d 281, 285 (Alaska 2013) (reviewing Rule 60(b)(4) decision de novo "because the validity of a judgment is strictly a question of law" (quoting *Leisnoi, Inc. v. Merdes & Merdes, P.C.*, 307 P.3d 879, 884 (Alaska 2013))).

party . . . from a final judgment" for several reasons, relevant here including: "(1) mistake, inadvertence, surprise or excusable neglect"; "(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial"; and "(3) fraud . . . , misrepresentation, or other misconduct of an adverse party."[6] "The rules governing relief from final judgments on grounds such as mistake or fraud are applicable to property settlements in divorce decrees."[7] Rule 60(b) "attempts to preserve the delicate balance between the conflicting principles that litigation be brought to an end and that justice be done in light of all the facts," but its purpose is not to "indulge a party's discontent over the effects of its bargain."[8] "Accordingly, when a party makes a deliberate, strategic choice to settle[,] [that party] cannot be relieved of such a choice merely because [that party's] assessment of the consequences was incorrect."[9]

### 1. Mistake and newly discovered evidence

Although the superior court focused on Rule 60(b)(3) in its decision on the record, the court also discussed subsections (b)(1) and (2) and implicitly ruled that George did not meet the requirements of either. The court stated that prior to mediation and settlement George had or should have had the joint checking account statements showing Tracy's expenditures. George's decision to enter the settlement agreement was therefore not based on mistake or excusable neglect for Rule 60(b)(1) relief, and the

---

[6] Alaska R. Civ. P. 60(b)(1)-(3).

[7] *Hatten v. Hatten*, 917 P.2d 667, 670 n.3 (Alaska 1996) (citing *Larson v. Larson*, 661 P.2d 626, 628 (Alaska 1983)).

[8] *Sandberg v. Sandberg*, 322 P.3d 879, 887 (Alaska 2014) (first quoting *Lowe v. Lowe*, 817 P.2d 453, 459 (Alaska 1991); then quoting *Dickerson v. Williams*, 956 P.2d 458, 466 (Alaska 1998)).

[9] *Id.* (quoting *Dickerson*, 956 P.2d at 466).

evidence of Tracy's spending was therefore neither new nor sufficient for relief under Rule 60(b)(2).  The court did not believe the documents George produced would have changed the case's result, noting that George had provided no evidence of Tracy hiding a "big pot of money" from the marital estate.

George continues to argue on appeal that he could not possibly have agreed to such a one-sided settlement, and that the exhibits he produced at the enforcement hearing constitute newly discovered evidence sufficient to grant him relief from judgment.  Those exhibits included bank account statements showing Tracy's post-separation spending and additional credit cards and bank accounts in Tracy's name or to which she had access.  George also argues that the superior court erred by requiring him to show that Tracy hid a "big pot of money."

Rule 60(b)(1) allows a court to relieve a party from judgment upon a showing of "mistake, inadvertence, surprise or excusable neglect."  To gain relief under Rule 60(b)(1) a party must show not only neglect or mistake, but a valid excuse for it.[10] "Deliberate conduct is never mistake or excusable neglect."[11]  Moreover, a court "will not find a 'mistake' where no facts in the record support a party's claim of lack of understanding."[12]  As discussed further below, George is ineligible for this relief for the same reasons he is ineligible for Rule 60(b)(2) relief:  the evidence of Tracy's spending was not new, and the record shows that he was aware of it during settlement mediation.[13]

---

[10]     *See id.*; *Dickerson v. Goodman*, 161 P.3d 1205, 1207 (Alaska 2007).

[11]     *Sandberg*, 322 P.3d at  887 (alteration omitted) (quoting *Dickerson v. Williams*, 956 P.2d 458, 465-66 (Alaska 1998)).

[12]     *Id.*

[13]     *See id.* at 887-88 (denying relief under Rule 60(b)(1) because record held no evidence of mistaken belief and moving party testified she was aware house was

(continued...)

Rule 60(b)(2) allows a court to relieve a party from judgment based on "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial." "[N]ewly discovered evidence must: (1) be such as would probably change the result on a new trial; (2) have been discovered since the trial; (3) be of such a nature that it could not have been discovered before trial by due diligence; (4) be material; (5) not be merely cumulative or impeaching."[14]

Because many of George's enforcement hearing exhibits were disclosed at the prior divorce hearing, they cannot be considered newly discovered evidence.[15] George presented statements from Tracy's personal checking account and personal credit card, both of which were disclosed prior to settlement. He presented statements from one of Tracy's father's credit cards that likewise was disclosed prior to settlement. George provided January 2015 and May 2015 statements from Tracy's Macy's account detailing spending in 2015, with a handwritten note saying "She showed this document [May 2015 statement] but failed to show the one [January 2015 statement] where she charged 963.00 and paid for it from [George's] account." George's handwritten note acknowledges that Tracy had disclosed her Macy's account prior to settlement. And even had Tracy not disclosed that account, the joint checking account statements show the January 2015 Macy's purchases.

---

[13]     (...continued)
marital property at time of settlement).

[14]     *Babinec v. Yabuki*, 799 P.2d 1325, 1333 (Alaska 1990) (citing *McCall v. Coats*, 777 P.2d 655, 657 (Alaska 1989)).

[15]     *See id.* ("[N]ewly discovered evidence must . . . have been discovered since the trial . . . ." (citing *McCall*, 777 P.2d at 657)).

Both George's appellate brief and the record show that prior to the settlement George was aware of the alleged "discrepancies" in Tracy's spending. We have held that a party does not meet the due diligence standard of Rule 60(b)(2) if that party was aware of a gap in the record and declined to pursue it.[16] George states in his appellate brief that he "learned of the discrepancies in the disclosures of Tracy during the Settlement Mediation" and that he "acquired the necessary evidence" supporting his fraud allegations "prior to Mediation and the Final Settlement hearing before the court." If George was unaware of specifics prior to the settlement, he did not exercise due diligence regarding Tracy's alleged post-separation spending.

The record bears out George's statement that he knew about Tracy's spending before settlement. George's allegations about Tracy needlessly spending marital funds all involve transfers from their shared bank account to other accounts or credit cards. That joint account's most recent balance was included in the property division spreadsheet, as was Tracy's separate bank account's balance. The spreadsheet indicates those account statements were included as exhibits at the divorce hearing. And, perhaps most tellingly, the spreadsheet contains a section entitled "Post Separation Credits Owed to Husband," including a line called "Cash Post Separation Tracy" valued at $19,487.94. The superior court asked both George and Tracy about that section of the spreadsheet during the divorce hearing; both stated that the settlement reflected their agreement about those credits. That value appears to represent the same post-separation spending by Tracy alleged here and to demonstrate George was aware of the spending before entering into the settlement.

---

[16] *Id.* ("[T]he trial court found that counsel made the decision to use the absence of records . . . as a device to attack the credibility of the [opposing party's] claims. Under these circumstances, the trial court's conclusion that Babinec did not use due diligence to obtain . . . information and records is not an abuse of discretion.").

Even if, as George argues, Tracy misrepresented her spending at the original divorce proceeding, George was not entitled to rely on those statements if he "had actual knowledge" before settlement that they may have been false.[17] George's decision not to pursue the issue of Tracy's alleged post-separation spending before agreeing to the settlement therefore demonstrates that he did not fulfill Rule 60(b)(2)'s due diligence requirement.[18]

The remaining new evidence George produced is not likely sufficient to change the case's outcome. George provided bank statements from his and Tracy's daughter's account and Tracy's father's account, both showing Tracy is a co-signer. George also provided a 2011 statement from one of Tracy's father's credit cards, a different credit card in Tracy's father's name, an investment statement in Tracy's father's name, and a credit card approval letter to Tracy with a handwritten note (seemingly written by Tracy) saying "applied for to get free shipping, never used, cancelled, no statements." These account documents show no activity or spending. Tracy's father's credit card statement does not refer to Tracy at all, even as a co-signer, and the 2011 statement long precedes George and Tracy's separation.

The only account both linked to Tracy and showing activity during the relevant time period was their daughter's. Some activity on the daughter's account seems to correspond with activity on George and Tracy's joint checking account, but none of the documents demonstrates that Tracy was responsible for any transfers or spending related to the daughter's account. George has not shown that Tracy's access

---

[17]     *See Dickerson v. Williams*, 956 P.2d 458, 468 (Alaska 1998) (holding moving party failed to exercise due diligence by allegedly relying on misrepresentations when she "had actual knowledge that they were unreliable when she allegedly relied on them").

[18]     *See id.*

to their daughter's account was significant enough to change how the marital property should have been divided.[19] As the superior court noted, families transfer money to their children's accounts "all the time." More evidence would be required to show that Tracy was hiding marital assets in their daughter's bank account.

George seems to argue that the superior court committed legal error when it stated there was no "big pot of money" that Tracy hid. George appears to have interpreted the court's statement to mean there was not enough money at stake for his claims to matter. But under Rule 60(b)(2) newly discovered evidence must "be such as would probably change the result on a new trial."[20] The court's statement likely related to that requirement. The court's statement about a "big pot of money" was therefore relevant to the proper analysis under Rule 60(b)(2) and was not legal error.

Because most of the evidence George produced was not new and because none of the plausibly new evidence shows any spending or other activity that would have affected the outcome of this case, the superior court did not abuse its discretion when it determined George was not entitled to relief under Rule 60(b)(2). Relatedly, because George was aware of the evidence at the time of settlement, any claims of mistake or excusable neglect under Rule 60(b)(1) are unavailing.

### 2. Fraud, misrepresentation, or misconduct

"Under Rule 60(b)(3), a litigant can receive relief from a court order or judgment by showing 'fraud, . . . misrepresentation, or other misconduct of an adverse

---

[19] *See Frost v. Ayojiak*, 957 P.2d 1353, 1358 (Alaska 1998) (granting Rule 60(b)(2) relief when new evidence would have been sufficient to provide a "meritorious defense" to the original action).

[20] *Babinec*, 799 P.2d at 1333.

party' by clear and convincing evidence."[21] "The conduct complained of must be material in the sense that it prevented the losing party from fully and fairly presenting his case or defense."[22] "Where the misconduct in question relates to falsehoods conveyed in the course of discovery, the information withheld need not be of such nature as would necessarily alter the result in the case."[23] But "Rule 60(b)(3) was not intended to reward litigants who have failed to adequately investigate their case."[24]

The essence of George's argument under Rule 60(b)(3) is that during discovery and through testimony Tracy's fraudulent failure to disclose assets prevented him from securing a fair settlement. George argues that Tracy falsely claimed to have limited financial means "as reason for negotiating a higher percentage of the marital division of assets," hid marital assets, testified inconsistently about her intent to leave the marriage, used marital funds for unnecessary shopping and vacations, and transferred marital funds to non-marital accounts.

The superior court found no fraud or misrepresentation by Tracy. The court observed that before settlement George had access to both the joint bank account and Tracy's personal checking account. The court observed that many purchases George described went through his and Tracy's joint account and that George said he knew about them. Concluding "things really have to be pretty remarkable before you're entitled to relief," the court found George had not met that burden.

---

[21]     *Espeland v. OneWest Bank, FSB*, 323 P.3d 2, 14 (Alaska 2014) (alteration in original) (footnote omitted) (first quoting *Babinec*, 799 P.2d at 1328 n.3; then citing *Babinec*, 799 P.2d at 1333).

[22]     *Alaskan Adventure Tours, Inc. v. City & Borough of Yakutat*, 307 P.3d 955, 960 (Alaska 2013) (quoting *Babinec*, 799 P.2d at 1333).

[23]     *Babinec*, 799 P.2d at 1333.

[24]     *Alaskan Adventure Tours*, 307 P.3d at 961.

Our examination of the record does not yield clear and convincing evidence that Tracy committed fraud or induced George to agree to an unfair settlement. The superior court was not persuaded by George's testimony that he was misled in agreeing to the settlement.[25] The court instead found Tracy credible when she "said under oath" that she was not hiding assets. "We defer to a superior court's credibility determinations, particularly when they are based on oral testimony."[26] And the record supports the court's determination that Tracy did not hide assets. George's evidence showed that Tracy disclosed her checking account, credit card, and Macy's account. Tracy testified she provided her attorney a credit report listing her assets and debts, and George has provided no definitive evidence the remaining disputed accounts were absent from discovery. It is plausible the parties simply determined during mediation that any other accounts connected to Tracy were either not marital — such as her credit card and her daughter's and father's accounts — or not significant enough to include in the settlement — such as the credit card Tracy apparently applied for but did not use. It was thus not an abuse of discretion for the superior court to credit Tracy's testimony about her assets.

The record does not contain clear and convincing evidence that Tracy's testimony was false or misleading. George argues that at the enforcement hearing Tracy "admitted to executing an 'exit plan' in April of 2014," even though at the original divorce hearing she testified "that she had no plan to leave." Tracy did describe an "exit plan" in her testimony at the enforcement hearing, but George points to no testimony by Tracy at the original divorce hearing about any plans to leave the marriage. Even if

---

[25]    *Cf. Song v. Song*, 972 P.2d 589, 591 (Alaska 1999) (granting relief after moving party credibly testified she did not understand the settlement agreement when she signed it).

[26]    *Hannah B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 289 P.3d 924, 930 (Alaska 2012).

Tracy gave inconsistent testimony about her intent to leave the marriage, we noted in *Alaskan Adventure Tours, Inc. v. City & Borough of Yakutat* that "a succession of imprecise testimonies and slight contradictions . . . falls far short of meeting the clear and convincing evidentiary standard."[27] Any possible contradictions in Tracy's testimony about leaving the marriage are insufficient evidence of fraud and are largely unrelated to George's other fraud allegations.

The record also does not support George's argument that Tracy committed fraud by spending marital funds. The record contains the shared bank account statements from August 2014 and February 2015 and includes George's annotations alleging that many listed transactions constituted unnecessary spending by Tracy. The record shows three payments between December 2014 and February 2015 from the joint checking account to a credit card held in Tracy's name. Tracy also paid $800 from the joint checking account to her Macy's account on January 26, 2015.

Had this divorce gone to trial the superior court likely would have taken evidence about any allegedly unnecessary spending to determine whether Tracy dissipated marital property after separation, and, if so, how to account for that dissipation when dividing the property.[28] But George's apparent awareness of Tracy's spending undermines the argument that he was deprived of an opportunity to make his case. As previously noted, before settling George had access to the joint account statements and

---

[27]    307 P.3d at 962.

[28]    Because this case was settled, the superior court made no finding about the parties' separation date. But if the court were dividing property and found a party had dissipated marital assets, its valuation could have been as of separation rather than trial. *See Sandberg v. Sandberg*, 322 P.3d 879, 891 (Alaska 2014) ("[M]arital property is to be valued at the time of trial or, in some instances, at the time of separation.").

"could have examined these issues at or long before trial";[29] he had in fact already investigated Tracy's spending and listed it in the settlement spreadsheet. George entered into the settlement agreement despite having this information, and he was not deprived of a fair opportunity to make his case.[30]

The superior court's determination that George failed to provide clear and convincing evidence of fraud sufficient to set aside the property settlement was not an abuse of discretion. George appears to have made a "deliberate, strategic choice to settle," and Rule 60(b) is not meant to grant relief from judgment merely because his "assessment of the consequences was incorrect."[31]

## B. George Is Not Entitled To Relief Under Alaska Civil Rule 26.1.

George argues that Tracy's spending and alleged failure to make full disclosures violated a pretrial order and Alaska Civil Rule 26.1. He also asserts that Tracy perjured herself at the divorce hearing.[32] We decline to address these claims because they are "direct attacks on the . . . divorce decree" and should have been appealed within 30 days of the original divorce decree.[33]

---

[29] *Alaskan Adventure Tours*, 307 P.3d at 961-62 (denying Rule 60(b)(3) relief when moving party failed to conduct discovery into a matter it knew about before trial).

[30] *See id.* ("Rule 60(b)(3) was not intended to reward litigants who have failed to adequately investigate . . . ."); *Babinec v. Yabuki*, 799 P.2d 1325, 1333 (Alaska 1990).

[31] *Sandberg*, 322 P.3d at 887 (quoting *Dickerson v. Williams*, 956 P.2d 458, 466 (Alaska 1998)).

[32] George's perjury argument is partially based on factual inaccuracy. Arguing that Tracy made false statements about her financial condition, George notes she had over $10,000 in a separate account. But that account was included as a marital asset in the property settlement, and its existence did not skew the settlement in Tracy's favor.

[33] *Jackson v. Sey*, 315 P.3d 674, 678 (Alaska 2013); *see* Alaska R. App.
(continued...)

**C.      George's Remaining Claims Of Error Are Not Sufficient to Require Reversal.**

George makes an unsubstantiated claim that the judge "appeared to nod off" during George's testimony and that the decision on the record cited the wrong bank account. But the court's decision on the record addressed all of George's arguments, and it was apparen t the court had reviewed George's evidence. These claims are not sufficient to show reversible error.

## V.      CONCLUSION

The superior court's decision granting Tracy's motion to enforce the judgment and denying George's motion for relief from judgment is AFFIRMED.

---

[33]      (...continued)
P. 204 (requiring appeals to be filed within 30 days of entry of judgment).